IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

    vs.                                            16-CR-668 JAP

**STEVE COLEMAN**,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

In his MOTION TO DISMISS COUNT II AND MOTION TO SUPPRESS ALL FRUITS OF SEARCH, FOR ALL PURPOSES, INCLUDING BUT NOT LIMITED TO TRIAL TESTIMONY, IMPEACHMENT, REBUTTAL, CALCULATION OF SENTENCING GUIDELINES, AND SENTENCING CONSIDERATION (Doc. No. 20) ("Motion"), Defendant Steve Coleman argues that the January 22, 2016 search of his home and property was unconstitutional and asks the Court to suppress all evidence seized during this search. The United States opposes the Motion on the basis that the search, which was conducted in accordance with a state court search warrant, was lawful and reasonably executed. *See* UNITED STATES' RESPONSE TO MOTION TO SUPPRESS FRUITS OF SEARCH AND DISMISS COUNTS TWO (Doc. No. 21) ("Response"). In his reply, Defendant reiterates his claims challenging both the validity of the warrant and the manner of its execution. *See* DEFENDANT'S REPLY TO THE UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT II, AND MOTION TO SUPPRESS ALL FRUITS OF SEARCH, FOR ALL PURPOSES, INCLUDING BUT NOT LIMITED TO TRIAL

TESTIMONY, IMPEACHMENT, REBUTTAL, CALCULATION OF SENTENCING

GUIDELINES, AND SENTENCING CONSIDERATION (Doc. No. 25) ("Reply").

This MEMORANDUM OPINION AND ORDER only addresses Defendant's attacks on

the validity of the warrant. Because these attacks lack merit, the Court will deny Defendant's

Motion in part and will reserve ruling on the motion in part. By separate order, the Court will set

a supplemental briefing schedule to address Defendant's claim that officers grossly exceeded the

scope of the warrant.

## Background

### A.  The Warrant to Search Defendant's Home and Property

For the purposes of ruling on Defendant's Motion, the Court accepts as true the following

undisputed allegations contained in the January 22, 2016 search warrant and incorporated

affidavit. On January 21, 2016, New Mexico State Police Officer William Radasa was on-duty

when he received a dispatch call regarding an animal shooting. *See* SEARCH WARRANT (Doc.

No. 21-1 at 3). The caller, Kelsi Maynard, reported that her neighbor, Defendant Steve Coleman,

had shot her two dogs after the dogs wandered onto Mr. Coleman's property. *Id.* Officer Radasa

drove to Ms. Maynard's residence and obtained a statement. *Id.* According to Ms. Maynard, she

regularly allowed her two dogs – an English Mastiff and a Black Rottweiler – to roam freely. *Id.*

at 4. On January 21, 2016, Ms. Maynard heard her dogs barking in the distance and called the

Colemans seeking permission to enter their property to retrieve the dogs. After a few missed

calls, Ms. Maynard spoke with Ms. Coleman on Ms. Coleman's cellphone. Ms. Coleman told

Ms. Maynard that she was driving home and would let Ms. Maynard onto the Coleman property

when she arrived. *Id.*

Based on this conversation, Ms. Maynard drove to the gate of the Coleman property and waited for Ms. Coleman. Once Ms. Coleman arrived, Ms. Maynard and Ms. Coleman entered the property with Ms. Maynard following Ms. Coleman. *Id.* Before they reached the residence, Ms. Maynard heard gun shots. She continued driving and came upon Mr. Coleman standing outside with a gun in his hand. He admitted to shooting at her dogs. Ms. Maynard was afraid, so she left the property, went home and called 911. *Id.* She subsequently observed Mr. Coleman "driving around . . . in a white pickup truck and further observed him going in and out of his barn/shed on the property." *Id.*

After speaking with Ms. Maynard, Officer Radasa requested assistance from the McKinley County Sherriff's Department. Officers from the department stopped Mr. and Ms. Coleman who were driving nearby. *Id.* These officers detained Mr. Coleman who waived his Miranda rights and agreed to give a statement to the police. *Id.* Mr. Coleman admitted to the police that he had shot at Ms. Maynard's dogs. *Id.* at 5. He explained that the dogs were threatening his two female puppies. He claimed he first tried chasing Ms. Maynard's dogs away but was unsuccessful. *Id.* at 4-5. He acknowledged that he was a felon. *Id.* at 5. But he maintained that the pistol he used to shoot the dogs belonged to his wife and was a gift from their son. He offered to let officers search the home for the pistol, which he remembered leaving on the kitchen table or living room chair. *Id.*

Rather than accept this offer, officers arrested Mr. Coleman and secured the premises as an active crime scene. *Id.* They walked around the exterior of the residence and saw "four rifle spent cartridges on the exterior south side of the residence." *Id.* Officers accompanied Ms. Coleman into the house to obtain clothing and personal items. *Id.* They told Mr. and Ms. Coleman that they would be obtaining a warrant to search the property. *Id.* Officer Radasa drove

3

Mr. Coleman to jail and booked him into custody. He noted that Mr. Coleman smelled like

alcohol and that Mr. Coleman had admitted to consuming one beer. Mr. Coleman blew a .06 on

the breath sample. *Id.* at 6.

The morning of January 22, 2016, Officer Rasada obtained a warrant to search Defendant

Coleman's property. *Id.* at 1. The warrant identified the property as: 185 Poor Farm Road,

Thoreau, New Mexico. It authorized the search of:

> The premises of Steve Coleman, its curtilage, all dwelling(s), structure(s), whether
> attached and/or unattached, trash container(s) well house(s) and/or [sic] located at 185
> Poor Farm Road, Thoreau, New Mexico. The premises appears to consist of a brown
> adobe house with the front door facing east with a white garage.

*Id.* It allowed officers to seize: (1) fingerprints and footprints, (2) DNA evidence, (3) firearms,

(4) ammunition, (5) firearm documentation, (6) dog remains, (7) photographs of the deceased

dogs, (8) alcoholic beverages, and (9) electronic and media equipment. *Id.* at 2-3.

## B. Findings of Fact

On June 14, 2016, the Court held a hearing on Defendant's Motion.  At this hearing Ms.

Coleman and Officer Radasa testified about the location and condition of the Coleman property.

Based on this testimony, the Court makes the following findings of fact under Federal Rule of

Criminal Procedure 12(d).

1. As of January 21, 2016, Steve Coleman and his wife Elizabeth Coleman resided at 185
   Poor Farm Road, Thoreau, New Mexico. TRANSCRIPT OF JUNE 14, 2016 HEARING
   (Doc. No. 28 at 37:7-10, 42:15-16) ("Transcript").

2. The Coleman property, which comprises roughly 423.5 acres, is completely enclosed by
   a fence. *Id.* at 27:11-19, 45:4-8. The only way to access the property is through a gate,
   which is kept locked. *Id.* at 29:15-16, 45:13-15.

3.  Located within the property is:  a main residence, an older house (which the parties' call the "old house"), a barn, and a shed. *Id.* at 30:16-21. In January 2016, at the time of the search, Mr. and Ms. Coleman resided in the main residence, *id.* at 33:4-6, and used the old house to store personal items, *id.* at 40:15-16.

4.  The main residence has a small fenced in front yard and a small fenced in back yard. *Id.* at 35:3-5.

5.  Mr. and Ms. Coleman always keep the old house, the barn, and the shed locked. *Id.* at 32:21-22, 33:1-3.

6.  The old house is located .6 mile northeast from the main house. *Id.* at 30:18-19.

7.  The barn and the shed are located .6 of a mile southeast from the main house. *Id.* at 30:19-21.

8.  The Coleman property is located on Poor Farm Road, an unmarked road running south of Interstate I-40. *Id.* at 27:25, 28:7-8; *see also* Defendant's Exhibit 31.

9.  The Coleman property is not labeled with a house number or mail box number. Transcript at 44:7-13. Mr. and Ms. Coleman do not receive mail delivery at their property. *Id.* at 28:14-16.

10. The only address Mr. and Mrs. Coleman have for the property is 185 Poor Farm Road: the address on the utility bill. *Id.* at 44:18-22. This is the address that is listed on Mr. and Mrs. Coleman's drivers' licenses. *Id.* at 44:23-25, 59:18-23.

**Discussion**

In the Motion, Defendant presents several overlapping arguments regarding the lack of necessity for the warrant and its alleged overbreadth. The thrust of Defendant's complaints is that the crime alleged – Defendant's use of a pistol to shoot at his neighbor's dogs – did not

5

provide adequate justification for officers to search his entire home and property, including all of

his outbuildings, for any and all firearms in Defendant's possession. To the extent possible, the

Court will address each of Defendant's arguments separately.

## A.  Necessity of the Warrant

Defendant first contends that the Court should suppress the search of his home because

the police did not need to obtain a search warrant to acquire the firearm Defendant used to shoot

at Ms. Maynard's dogs. Specifically, Defendant claims that because he and his wife consented to

a search for the gun used to shoot at the dogs, the police acted unreasonably in obtaining a

broader search warrant for all the guns in his house. In Defendant's own words:

> [T]he consent given was specific to the house and to the gun involved. The police could
> have quickly and easily obtained the gun for which they had probable cause to search.
> Delaying for many hours to get a broader search warrant was a ruse, a sham to obtain a
> general search warrant, and find an opportunity to turn the shooting of an aggressive dog
> into a full-blown witch hunt against an unpopular former police officer.

Motion at 12. As formulated, this argument is completely spurious. Defendant does not cite to

any case law that would support a finding that a defendant's provision of consent bars police

from obtaining a warrant to search the defendant's home for related items. To the contrary, "[t]he

Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a

warrant." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). Even where consent is offered, if

there is any questions about the validity or scope of this consent, it may behoove officers to

obtain a warrant in order to take advantage of the deference given to warrant searches and the

presumption of good-faith that attaches to searches conducted under a warrant. *See United States*

*v. Harrison*, 566 F.3d 1254, 1256 (10th Cir. 2009) (discussing the good faith presumption that

weighs against suppressing evidence obtained in accordance with a warrant).

Moreover, in a case like this one, where a defendant only provides limited consent to search his home, absent exigent circumstances, officer <u>must</u> obtain a warrant if they would like to conduct a broader search than the search defendant has authorized. *See United States v. Canas*, 462 F. App'x 836, 838 (10th Cir. 2012) ("In the absence of consent, it is well-settled that police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."). In other words, the officers' decision to obtain a warrant in this case was not only wise, it was mandatory given the scope of the desired search. Nothing about Defendant's narrow provision of consent to search for one firearm invalidates the officers' much broader, subsequently-obtained warrant. Insofar as Defendant intimates that the warrant was "general" and too "broad," Defendant is simply restating his direct challenge to the validity of the warrant. This is a separate question which the Court addresses below. Because there is nothing in the law to suggest that consent can nullify an otherwise valid warrant, the Court rejects Defendant's first argument.

## B. Particularity of the Warrant

Defendant next maintains that the warrant fails to satisfy the particularity requirement. In general, the Fourth Amendment requires that a warrant particularly describe both the place to be searched and the things to be seized. *United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993). This is a two-part requirement. First, a search warrant must describe the place to be searched with enough detail "to enable the executing officer to locate and identify the [correct] premises with reasonable effort." *Harman v. Pollock*, 446 F.3d 1069, 1078 (10th Cir. 2006). Second, the "search should be confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Brown*, 984 F.2d at 1077. Whether a warrant is sufficiently "particular" is a practical determination. The test is one of

reasonableness: is "the description . . . as specific as the circumstances and the nature of the

activity under investigation permit"? *United States v. Leary*, 846 F.2d 592, 601 (10th Cir. 1988).

The goal is to preclude "general, exploratory rummaging in a person's belongings," *id.* at 600,

and to ensure that officers do not mistakenly search the wrong residence, *Harman*, 446 F.3d at

1078.

      i.    *Place to be Searched*

     According to Defendant, the warrant to search his home and property failed to adequately

describe the place to be searched because "a neutral and detached law enforcement officer with

no prior knowledge of the case" would not be able to find the property or determine which

buildings to include in a search. Motion at 13. Defendant misstates the legal standard and

disregards key facts. "To determine if a search warrant adequately describes the place to be

searched, the test is (1) whether the description is sufficient to enable the executing officer to

locate and identify the premises with reasonable effort, and (2) whether any reasonable

probability exists that another premises might be mistakenly searched." *United States v. Layman*,

244 F. App'x 206, 212 (10th Cir. 2007) (emphasis added). In deciding whether a warrant meets

this standard, a court may consider the executing officer's familiarity with the place to be

searched. *Id.* at 213; *see also United States v. Brakeman*, 475 F.3d 1206, 1211-1212 (10th Cir.

2007) (while "an officer's knowledge cannot be the sole means of determining what property is

to be searched," the officer's personal knowledge of the premises may compensate for

ambiguities in a warrant's description of the place to be searched). Ultimately, whether a warrant

sufficiently describes the place to be searched is a fact-specific question; technical errors in a

warrant may be overcome by other guarantees of reliability, such as a correct description of the

home. *See Brakeman*, 475 F.3d at 1210-1212.

As quoted above, the warrant directed officers to search:

The premises of Steve Coleman, its curtilage, all dwelling(s), structure(s), whether attached and/or unattached, trash container(s) well house(s) and/or [sic] located at 185 Poor Farm Road, Thoreau, New Mexico. The premises appears to consist of a brown adobe house with the front door facing east with a white garage.

According to Defendant this description is insufficient because: (1) Poor Farm Road is not marked with a sign, (2) Mr. Coleman's address is not displayed on the property, and (3) Mr. Coleman does not have a post box for receiving mail anywhere on the property. In addition, Defendant faults the warrant for failing to provide police with physical descriptions of the outbuildings that police were authorized to search. In essence, this is a two-part attack on the descriptive sufficiency of the warrant. First, Defendant asserts that officers lacked sufficient information to correctly locate Mr. Colman's property. Second, even if officers were able to locate the correct property, Defendant insists that they did not have enough direction to know which buildings to search.

The Court is not persuaded by either argument. The Court begins from the proposition that it must read the warrant in a common sense manner to determine if it adequately described the place to be searched. *See Brakeman*, 475 F.3d at 1211 ("practical accuracy rather than technical precision controls [the] determination of the adequacy of a warrant's description of the place to be searched."). Here, the warrant identified Mr. Coleman's property by address: 185 Poor Farm Road, Thoreau, New Mexico. Ms. Coleman testified that this is, in fact, the address associated with the property. It is the address listed on Mr. and Ms. Coleman's utility bill and shown on each of their drivers' licenses. While the address is not posted on the property, the officers involved with the search were familiar with the area and knew where Defendant's property was located. Officers had been to the Coleman property prior to obtaining the warrant, had gone into the Coleman house with Ms. Coleman, and had stayed on the scene to secure the

9

property until a warrant could be obtained and a search executed. Given this series of events, it is

highly unlikely that officers would not be able to find the property or would search the wrong

property due to the lack of street signs and house numbers. *See Layman*, 244 F. App'x at 213

("the continued presence of officers at the location while the search warrant was obtained"

supported a finding that the warrant was sufficiently particular).

Moreover, aside from their continued presence at the scene, officers were in possession

of other information from their investigation and from the warrant that would help them correctly

find the Coleman property with reasonable effort. The warrant clearly indicates that the Coleman

property adjoins the property of Kelsi Maynard, which is also located on Poor Farm Road, a road

that officers knew how to find from their investigation of the shooting of Ms. Maynard's dogs.

The warrant affidavit also mentions that the Coleman property is gated and the warrant provides

a description of the main house and garage. Given the rural environment and the officers'

familiarity with the scene, the Court finds that this information along with the address satisfied

Fourth Amendment requirement with regard to the location of the property.

As for Defendant's second contention, the Court acknowledges that it would have been

preferable for the warrant to describe each building to be searched. However, Defendant has not

shown that the failure to include a separate description of each building created any risk that

officers would not know what buildings to search or would accidentally search neighboring

buildings that did not belong to Mr. Coleman. As mentioned in the warrant affidavit, the

Coleman property is surrounded by a fence with a locked gate. The existence of this fence

allowed officers to easily determine which outbuildings to search and kept officers from

mistakenly searching outbuildings belonging to someone else who was not involved in the

alleged criminal activity. For all of these reasons, the Court concludes that the warrant

adequately described the place to be searched.

> ii.    *Things to be Seized*

The section of Defendant's motion entitled "the warrant did not particularly describe the

items to be seized" is comprised almost entirely of boilerplate case quotations regarding the

particularity requirement. Defendant does not attach the warrant, discuss the categories of items

to be seized, or provide argument about why these items are not sufficiently described. The

extent of Defendant's argument about the particularity of the items to be seized reads as follows:

> But what we have here is a massive general search, when the crime reported was shooting
> a dog with a firearm, even when the police believed that Mr. Coleman had a prior felony
> and could not possess firearms. There is no description of the gun used to shoot the dog,
> not even whether it is a handgun, a rifle, or any other type of firearm, no less the brand or
> type of gun.

Motion at 15-16. This argument is so undeveloped that the Court declines to review it.

*See Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) ("[I]ssues adverted

to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

deemed waived."). Defendant does not explain why he believes the search was a "massive

general search." I.e., Defendant does not discuss, specifically, the items (e.g., dog remains) listed

in the warrant and explain why the warrant did not properly authorize the seizure of these items.

In the absence of this type of analysis, the Court is not in a position to invalidate the warrant as a

whole.

As Tenth Circuit precedent makes clear, the particularity of a warrant is not a uniform

property. A warrant may contain both specific as well as unconstitutionally broad language. In

such cases, in general, "the broad portion may be redacted and the balance of the warrant

considered valid." Brown, 984 F.2d at 1077. Accordingly, to prevail on a motion to suppress for

lack of particularity, a defendant must make a clause-by-clause showing that a warrant is overbroad and must either convince the court that the evidence he seeks to suppress was seized under an invalid clause or he must show that the invalid portions of the warrant predominate so that total suppression is required. *United States v. Sells*, 463 F.3d 1148, 1155, 1158 (10th Cir. 2006). Defendant does not make this sort of argument and the Court will not construct one on his behalf. As best the Court can tell, Defendant's particularity argument is just another avenue for complaining that the warrant should have been limited to searching for evidence related to Mr. Coleman's use of a firearm to shoot at Ms. Maynard's dogs and that probable cause did not exist to search for all firearms on the property. But, Defendant makes this argument later in Part III of his Motion and there is no need to address it twice.

### C. Validity of the Search of the Outbuildings

In Part II.C of the Motion, Defendant asserts that the officers' search of the outbuildings – the old house, the barn, and the shed – was unconstitutional because these buildings did not fall within the curtilage of the main residence. The conceptual underpinnings of this argument, however, are slightly muddled. Defendant begins with the contention that "[g]enerally outbuildings beyond the curtilage may not be searched, unless the search warrant provides additional information supporting the conclusion that the probable cause showing reaches those outbuildings." Motion at 17. He then insists that the warrant fails this test because "[a]uthorization to search the 'curtilage' did not extend to the Coleman outbuildings, such as the 'old house' that was .6 of a mile from the main house." Motion at 18. Defendant appears to be making some combination of the following arguments: (1) the warrant affidavit only authorized the search of buildings within the curtilage, which would not include the old house where the sawed-off shotgun was found and (2) in the alternative, if the warrant affidavit authorized the

12

search of all outbuildings on the ranch, this portion of the warrant was not supported by probable

cause (i.e. there was not probable cause to search the outbuildings). These arguments are

logically distinct and the Court will address them separately.

The first question facing the Court is whether the warrant authorized the search of all

outbuildings on the gated property or only those outbuildings within the curtilage of the main

residence. Neither party spends any time addressing this question. Defendant appears to assume,

without explanation, that the warrant only authorized the search of buildings within the curtilage.

The United States, on the other hand, attempts to side-step the key issue by arguing that (1) the

search of outbuildings was valid because outbuildings were within the curtilage and (2) in the

alternative, if the outbuildings were located outside the curtilage, they enjoyed no Fourth

Amendment protections. This prompted Defendant to devote roughly five pages of his thirteen-

page reply explaining why the United States was wrong about the curtilage doctrine and

Defendant's Fourth Amendment privacy interest in his buildings.[1] Unfortunately, this briefing is

not helpful.

As the Court reads the warrant, in addition to authorizing the search of Defendant's home

and its curtilage, the warrant also authorized the search of all outbuildings on the property,

---

[1] Defendant is correct. Contrary to the United States' arguments, (1) the facts strongly suggest that the outbuildings, which were located more than .5 of a mile away from the main residence, were outside the curtilage of Defendant's residence, *see United States v. Dunn*, 480 U.S. 294, 300 (1987) (barn standing 60 feet away from house was not within the curtilage) and *Rieck v. Jensen*, 651 F.3d 1188, 1193 (10th Cir. 2011) (fence surrounding 17 acres was not an "enclosure surrounding the home" within the meaning of the curtilage doctrine), and (2) numerous courts have recognized that citizens enjoy a Fourth Amendment privacy interest in barns and other outbuildings, when these buildings fall outside the curtilage of a home. *Siebert v. Severino*, 256 F.3d 648 (7th Cir. 2001) (it was clearly established that police could not search locked barn without a warrant when barn was outside the curtilage); *United States v. Wright*, 991 F.2d 1182, 1186 (4th Cir. 1993) (defendant had reasonable expectation of privacy in barn that was outside curtilage); *United States v. Pace*, 955 F.2d 270, 276 (5th Cir. 1992) (defendant had reasonable expectation of privacy in a business structure).  In its attempts to support a claim that the outbuildings were located inside the curtilage, the United States quotes *Dunn*, 480 U.S. 1374, for the proposition that barns and other rural outbuildings lie within the curtilage of a farmhouse. Response at 9. This is the exact opposite of the holding in *Dunn*. The United States has quoted the *Dunn* dissent.

whether or not these buildings fell within the curtilage. *See* (Doc. No. 21-1 at 1) (authorizing the search of the premises, its curtilage, and all dwellings and structures at 185 Poor Farm Road). Consequently, the parties' lengthy dispute about whether the outbuildings were located within the curtilage of the home is superfluous. The search of these buildings, "all dwellings and structures at 185 Poor Farm Road," was conducted in accordance with a warrant and must be upheld unless this provision of the warrant is determined to be invalid.

This brings the Court to Defendant's second, and as best as the Court can tell, Defendant's primary argument: that there was not even "one iota of probable cause for searching" the three outbuildings. (Doc. No. 28 at 109:3-5). At the suppression hearing, Defendant argued that the allegations regarding Defendant's use of a firearm to shoot his neighbor's dog did not provide probable cause to search the other buildings on his property because there was no reason to believe firearms might be located in these buildings and the magistrate judge could not simply infer that Defendant must have other guns because he used only one gun, that allegedly belonged to his wife. *Id.* at 108:8-17. The Court is not persuaded.

Probable cause exists if "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of [the] crime will be found at the place to be searched." *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1330 (10th Cir. 2003) (internal citation omitted). "[P]robable cause does not require metaphysical certitude or proof beyond a reasonable doubt. Probable cause is a matter of probabilities and common sense conclusions, not certainties." *United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) (internal citation omitted). Here, the warrant affidavit provided probable cause to search the outbuildings. Police knew Defendant, a felon, had used a firearm to shoot at his neighbor's dogs. Police did not know where the dogs had gone after being shot. Mr. Coleman's neighbor reported she saw Mr.

14

Coleman driving around and going in and out of his barn/shed after the shooting. This information provided probable cause to search for weapons and dog remains in the outbuildings, where Mr. Coleman may have concealed them. Moreover, Defendant reported that he shot at his neighbor's dog with a pistol, but police found rifle shells on the ground outside Defendant's residence. This supported an inference that Defendant illegally possessed other weapons. *See United States v. Campbell*, 256 F.3d 381, 389 (6th Cir. 2001) (where police knew a felon had allegedly stolen firearms, it was proper for them to acquire warrant to search for all firearms in the felon's possession, whether stolen or not).

To the extent there can be any question about the probable cause analysis, the Court is required to give deference to the findings of the judge who signed the warrant. *See United States v. Edwards*, 813 F.3d 953, 960 (10th Cir. 2015) (a judge's probable cause determination is generally afforded great deference). A court may not reverse a probable cause determination unless the court finds that "under the totality of the circumstances presented in the affidavit, the judge [lacked] a substantial basis for determining that probable cause existed." *Id.* Here, Defendant makes no argument in this regard.  In fact, Defendant does not even mention the appropriate standard for reviewing probable cause determinations. However, the warrant clearly satisfies this lenient standard. As a result, the Court will deny Defendant's request that the Court invalidate the search of the outbuildings.

### D.  The Scope of the Warrant

In his penultimate argument, Defendant argues that the search was invalid because there was not probable cause "for the broad scope [of the search] geographically nor for the items listed in the affidavit." Motion at 21. Defendant takes the position that there was only probable cause to search for the firearm used to shoot at the dogs within and around the main residence.

15

*Id.* In other words, Defendant maintains that officers should not have been able to seize the other firearms that form the basis of the indictment because some of the firearms were in outbuildings and they were not used to shoot at the dogs. For the reasons already discussed, this argument is not meritorious. The Court must give deference to probable cause determinations. Here, there was substantial evidence for the state court judge to permit a search of the entire property for firearms. To the extent Defendant is challenging the seizure of other evidence (like alcohol), he has not sought to suppress this evidence nor developed any argument why its seizure, even if wrongful, warrants the suppression of the firearms.[2] The Court will not develop and address these arguments on Defendant's behalf.

IT IS THEREFORE ORDERED THAT:

1. Defendant's MOTION TO DISMISS COUNT II AND MOTION TO SUPPRESS ALL FRUITS OF SEARCH, FOR ALL PURPOSES, INCLUDING BUT NOT LIMITED TO TRIAL TESTIMONY, IMPEACHMENT, REBUTTAL, CALCULATION OF SENTENCING GUIDELINES, AND SENTENCING CONSIDERATION (Doc. No. 20) is denied in part.

2. The Court reserves ruling on Defendant's challenge to the manner of execution of the warrant to search Defendant's home and property.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Defendant's Reply contains a one-sentence argument that "there was no probable cause for searching for electronic or digital media devices." Reply at 25. Defendant, however, has waived this argument by not raising it in the opening brief and by not developing the argument with any explanation or case citations. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1169 (10th Cir. 2002) (one-sentence argument waived because not adequately briefed).